UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RICHARD M. STEIN,

                Plaintiff,

    -against-

COUNTY OF NASSAU,

               Defendant.
------------------------------------------------------------X

**OPINION & ORDER**
**17-CV-6055(SJF)(ARL)**

FEUERSTEIN, District Judge:

I.    Introduction

On October 17, 2017, plaintiff Richard M. Stein ("plaintiff" or "Stein") commenced this action against defendant County of Nassau ("defendant" or "the County"), pursuant to, *inter alia*, the Jones Act, 46 U.S.C. § 30104; general maritime law; and N.Y. Gen. Mun. Law § 205-e, seeking to recover for personal injuries he allegedly sustained as a result of the unseaworthiness of defendant's vessel and/or defendant's negligence. Pending before the Court is plaintiff's motion for partial summary judgment on the issue of liability on his Jones Act and unseaworthiness claims pursuant to Rule 56 of the Federal Rules of Civil Procedure; and defendant's application to dismiss plaintiff's claim pursuant to N.Y. Gen. Mun. Law § 205-e.[1] For the reasons set forth below, plaintiff's motion is denied and defendant's application is granted.

---

[1] Defendant did not cross-move for summary judgment dismissing any of plaintiff's claims, but requests dismissal of plaintiff's state law claim in its memorandum of law in opposition to plaintiff's motion for partial summary judgment. Plaintiff did not oppose or otherwise respond to defendant's application in his reply papers.

1

II.  Background

   A.  Factual Allegations[2]

On October 15, 2016, *i.e.*, the date of the accident, plaintiff was employed by the County as a member of the Nassau County Police Department ("NCPD"). (Plaintiff's Statement of Material Facts pursuant to Local Civil Rule 56.1(a) ["Plf. 56.1"], ¶ 1; Defendant's Counterstatement pursuant to Local Civil Rule 56.1(b) ["Def. 56.1"], ¶ 1). Plaintiff's command was the Marine Bureau. (Def. 56.1, ¶ 1; *see* Plf. 56.1, ¶ 1).

On the date of the accident, plaintiff was assigned to a tour from 7:00 a.m. until 7:00 p.m. at the Marine Bureau Base at Bay Park, located at the foot of First Avenue, in East Rockaway, New York, (Plf. 56.1, ¶¶ 2, 7; Def. 56.1, ¶¶ 2, 7), to work as a crew member on Vessel Marine 21, one of the NCPD's two (2) SAFE Boats, which was located at its berth in the boat basin at the NCPD Marine Bureau's Base at Bay Park. (Plf. 56.1, ¶¶ 3, 7; Def. 56.1, ¶¶ 3, 7). The County

---

[2] The factual allegations are taken from the pleadings and the parties' statements pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule 56.1"), to the extent that they are properly supported pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. *See* Local Civil Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."); *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 305 (S.D.N.Y. 2015) ("[I]f a party fails to properly support a statement by an adequate citation to the record, the Court may properly disregard that assertion."); *F.D.I.C. v. Hodge*, 50 F. Supp. 3d 327, 343, n. 2 (E.D.N.Y. 2014) ("Statements without citation to evidence may be properly ignored by the court."); *Kaur v. New York City Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 322 (S.D.N.Y. 2010) ("Where there are no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." (quotations, alterations and citation omitted)). Moreover, only those facts that are material to the disposition of the motions, *i.e.*, that "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), are set forth herein. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" (brackets in original) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505)). The following facts are undisputed unless otherwise indicated.

2

was the owner of the SAFE Boat to which plaintiff was assigned on that date, *i.e.*, Vessel Marine 21. (Plf. 56.1, ¶ 4; Def. 56.1, ¶ 4).

One of the means of access to the floating dock used by members of the NCPD's Marine Bureau to get to the vessels berthed at the Marine Bureau base was a wooden ladder affixed to a bulkhead. (Plf. 56.1, ¶ 6; Def. 56.1, ¶ 6). There is also a ramp or gangway on the east side of the dock which may be used by the Marine Bureau members to access the vessels. (Certification of Timothy F. Schweitzer, Esq. ["Schweitzer Cert."], Ex. 5 at p. 10).

On the date of the accident, at approximately 1:45 p.m., plaintiff was descending the wooden ladder to access the floating dock to get to the vessel to which he was assigned, when a rung near the bottom of the ladder broke, causing him to fall into the water between the dock and the bulkhead, striking the dock as he fell. (Schweitzer Cert., Ex. 1, ¶ 7; Ex. 5 at pp. 7-8; and Ex. 9). A "Supervisor's Report of Member's Action" (the "Supervisor's Report") indicates, *inter alia*, that plaintiff was acting within the scope of his official duties at the time of the accident; that he did not violate the Department Rules; and that he did not need to be trained or retrained. (*Id.*, Ex. 10). In addition, remarks by the commanding officer indicate, *inter alia*, "Environmental factor (ladder) was confirmed; remedial actions have been taken to prevent recurrence." (*Id.*)

B. Procedural History

On October 17, 2017, plaintiff commenced this action against the County, pursuant to, *inter alia*, the Jones Act, 46 U.S.C. § 30104; general maritime law; and N.Y. Gen. Mun. Law § 205-e, seeking to recover for personal injuries he allegedly sustained as a result of defendant's

3

negligence and the unseaworthiness of defendant's vessel. Issue was joined by the service of an answer on behalf of defendants on November 10, 2017.

Following the close of discovery, plaintiff moved for partial summary judgment on the issue of liability on his Jones Act and unseaworthiness claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. In its opposition to plaintiff's motion, defendant requests that plaintiff's state law claim under N.Y. Gen. Mun Law § 205-e be dismissed with prejudice.

III.  Discussion

   A.  Standard of Review

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *accord Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); *see also Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added) (internal quotations and citation omitted). "A fact is material if it 'might affect the outcome of the suit under the governing law[.]'" *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (quotations, alterations and citation omitted), and "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (quotations and citation omitted); *see also Hancock v. County of Rensselaer*, 882 F.3d 58, 64 (2d Cir. 2018) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party.") "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505); *accord Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 557 U.S. at 586, 129 S. Ct. at 2677 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); *accord Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted); *accord Jaffer*, 887 F.3d at 114. "[W]hen the moving party has carried its burden[,] . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [,]" *Scott v. Harris*, 550 U.S. 372,

380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (quoting *Matsushita Elec.*, 475 U.S. at 586-87, 106 S. Ct. 1348), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted). The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012) (quotations, brackets and citation omitted). "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat a summary judgment motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505); and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Federal Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."); *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment[.]" (quotations, alterations and citations omitted)). Since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . . [i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (quotations and citations omitted).

B. Unseaworthiness Claim

"[L]liability based upon unseaworthiness is wholly distinct from liability based upon negligence . . . [because] unseaworthiness is a condition, and how that condition came into being—whether by negligence or otherwise—is quite irrelevant to the owner's liability for personal injuries resulting from it." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498, 91 S. Ct. 514, 27 L. Ed. 2d 562 (1971).

"Under the principles of seaworthiness, an owner has an absolute duty to furnish a ship, crew, and appurtenances reasonably fit for their intended service." *Oxley v. City of New York*, 923 F.2d 22, 24 (2d Cir. 1991); *see also Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441, 121 S. Ct. 993, 148 L. Ed. 2d 931 (2001) ("Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea.") *Barlow v. Liberty Maritime Corp.*, 746 F.3d 518, 528 (2d Cir. 2014) ("In admiralty, ship owners are strictly liable for injury resulting from the unseaworthiness of their vessel and the vessel's appurtenances.") "An owner's failure to provide a ship, crew, and appurtenances reasonably fit for their intended service results is a species of liability without fault,' . . . and such liability does not depend either on negligence [] or on notice[.]" *Oxley*, 923 F.2d at 25 (quotations and citations omitted); *see also Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549, 80 S. Ct. 926, 4 L. Ed. 2d 941 (1960) ("[T]he owner's duty to furnish a seaworthy ship is absolute and completely independent of his duty under the Jones Act to exercise reasonable care.") Accordingly, "the shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability." *Mitchell*, 362 U.S. at 549, 80 S. Ct. 926; *see also Martinez v. City of New York*, 684 F. App'x 90, 92 (2d Cir. Mar. 29, 2017) (summary order) "[W]here a condition

7

renders a ship unseaworthy, liability attaches without regard to negligence or notice."); *Poignant v. United States*, 225 F.2d 595, 597 (2d Cir. 1955) ("Since the inquiry in unseaworthiness cases is not directed to the issue of the owner's fault, it follows that prior notice, actual or constructive, of the unseaworthy condition is not essential to a cause of action based on that doctrine.") Similarly, "lack of control does not prevent the accrual of absolute liability for unseaworthiness. . . ." *Poignant*, 225 F.2d at 597.

However, while the duty to furnish a seaworthy ship "is absolute, . . . it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use." *Mitchell*, 362 U.S. at 550, 80 S. Ct. 926; *see also Barlow*, 746 F.3d at 529 ("[A]lthough the doctrine of unseaworthiness entails liability without fault, there must still be a defect in the vessel." (quotations and citation omitted)). The owner is not "obligated to furnish an accident-free ship." *Mitchell*, 362 U.S. at 550, 80 S. Ct. 926; *see also Martinez*, 684 F. App'x at 92 ("Seaworthiness does not demand an accident-free ship, only one reasonably fit to be at sea.") "The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." *Mitchell*, 362 U.S. at 550, 80 S. Ct. 926; *accord Barlow*, 746 F.3d at 528. "Thus, the concept of the unseaworthiness of a ship is a relative one, dependent for definition in each instance upon the circumstances in which her fitness is drawn into question." *Mosley v. Cia. Mar. Adra, S.A.*, 314 F.2d 223, 227 (2d Cir. 1963). "A finding of seaworthiness is usually a finding of fact." *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 98, 64 S. Ct. 455, 88 L. Ed. 2d 561 (1944); *see also Quiles v. City of N.Y.*, 978 F. Supp. 2d 374, 386 (S.D.N.Y. 2013) ("Whether a

vessel is unseaworthy, and whether an unseaworthy condition proximately caused a plaintiff's injury, generally are questions of fact for the jury.")

In order to establish a "claim of unseaworthiness under general maritime law, a plaintiff must show that a vessel is 'insufficiently or defectively equipped[,]'" *Martinez*, 684 F. App'x at 92 (quoting *Oxley*, 923 F.2d at 25), "and that his injuries resulted from the unseaworthy condition of the vessel[.]" *Oxley*, 923 F.2d at 26. Although "the fact that equipment fails is some evidence that it was unfit for the duties it was undertaking[,] . . . it is not conclusive." *Barlow*, 746 F.3d at 529. Nonetheless, "[n]othing more need be shown except that the device in question failed under conditions when it should have functioned properly." *Barlow*, 746 F.3d at 529 (quoting *Oliveras v. Am. Exp. Isbrandtsen Lines, Inc.*, 431 F.2d 814, 816 (2d Cir. 1970)).

In addition to "the defective condition of a physical part of the ship itself[,] . . . [a] vessel's condition of unseaworthiness might arise from any number of circumstances[:] Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage, might be improper. For any of these reasons, or others, a vessel might not be reasonably fit for her intended service." *Usner*, 400 U.S. at 499, 91 S. Ct. 514. "Moreover, a vessel is considered unseaworthy if it lacks a safe place of ingress and egress." *Oxley*, 923 F.2d at 26; *see, e.g. Diebold v. Moore McCormack Bulk Transp. Lines, Inc.*, 805 F.2d 55, 58 (2d Cir. 1986); *Buch v. United States*, 220 F.2d 165, 166 (2d Cir. 1955).

Plaintiff has not demonstrated his entitlement to judgment as a matter of law on his unseaworthiness claim under general maritime law. "Piers and docks [are] deemed extensions of land," *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 206-07, 92 S. Ct. 418, 30 L. Ed. 2d 383

9

(1971); *accord MLC Fishing, Inc. v. Velez*, 667 F.3d 140, 142 (2d Cir. 2011), "while the means of access between a dock and a vessel is considered an 'appurtenance' of the vessel." *Florida Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 332 (5th Cir. 1993). "The gangplank has served as a rough dividing line . . . ." *Victory Carriers*, 404 U.S. at 207, 92 S. Ct. 418; *see also Romero Reyes v. Marine Enters., Inc.*, 494 F.2d 866, 870 (1st Cir. 1974) ("The authorities are virtually unanimous that maritime liability encompasses the gangway." (citing cases)).

Indeed, an "appurtenance" is defined as "[s]omething that belongs or is attached to something else; esp. something that is part of something else that is more important[.]" *Appurtenance*, Black's Law Dictionary (10th ed. 2014). The Supreme Court has indicated that appurtenances are "indispensable instruments, without which the ship could not perform its functions." *U.S. v. Dewey*, 188 U.S. 254, 269, 23 S. Ct. 415, 47 L. Ed. 2d 463 (1903).

All of the cases cited by plaintiff in support of its claim that a vessel may be considered unseaworthy for failure to provide a safe means of ingress or egress involved gangways, or other means of access, or the lack thereof, to the vessel itself. *See, e.g. Oxley*, 923 F.2d at 24 (broken cleats on the dock and the lack of a gangplank between the vessel and the dock rendered the vessel unseaworthy); *Romero Reyes*, 494 F.2d at 868 (fall from the gangway); *Toddy v. Arkansas Valley Dredging Co.*, 470 F. Supp. 692, 694 (E.D. Ark. 1979) (employer provided no means of ingress between the bank and the vessel); *Herbert v. Otto Candies, Inc.*, 402 F. Supp. 503, 505-06 (E.D. La. 1975) (failure to provide a safe means of ingress and egress from the decedent's crewboat to the vessel to which it was moored); *Wesley v. City of N.Y.*, 76 A.D.3d 925, 908 N.Y.S.2d 43 (N.Y. App. Div. 2010) (deckhand was injured while lowering a ramp from the dock to the back of the vessel). In other words, those cases all involved injuries caused by an

appurtenance to the vessel, or the lack of an indispensable appurtenance by which to embark or disembark the vessel.

Plaintiff has not demonstrated that he was injured by an appurtenance of defendant's vessel. In an analogous case, *In re Complaint of MLC Fishing, Inc.*, No. 08-cv-3056, 2010 WL 582570 (E.D.N.Y. Feb. 6, 2010), *aff'd*, 667 F.3d 140 (2d Cir. 2011), the plaintiff was injured on a ramp leading to a floating dock, which served as the only means of ingress and egress to the vessel. The court rejected the plaintiff's argument that the ramp and/or floating dock constituted an appurtenance of the vessel or was equivalent to the vessel's gangway. In affirming the district court's decision, the Second Circuit, relying, in part, upon *Victory Carriers*, *supra*, and the Supreme Court's decision in *Cope v. Vallette Dry-Dock Co.*, 119 U.S. 625, 627, 7 S. Ct. 336, 30 L. Ed. 501 (1887) (holding that floating docks are considered to be extensions of land), held that the ramp to the floating dock was properly "considered an extension of the land;" not an appurtenance of the vessel. *MLC Fishing*, 667 F.3d at 142 (quotations omitted). In this case, not only was the wooden ladder from which plaintiff fell separated from the vessel by a floating dock, it indisputably was not the only means of ingress and egress to the vessel.[3] *See, e.g.*

---

[3] Nor has plaintiff established as a matter of law that the ladder was under the exclusive use or control of defendant. Plaintiff's conclusory assertions that the County had exclusive use and control of the ladder are insufficient to demonstrate his entitlement to judgment as a matter of law on that issue. *See, e.g. McNeill v. Jordan*, No. 14-cv-2872, 2017 WL 9482092, at * 7 (E.D.N.Y. Feb. 17, 2017), *report and recommendation adopted*, 2017 WL 2955763 (E.D.N.Y. July 11, 2017), *appeal dismissed*, 2017 WL 6333976 (2d Cir. Nov. 30, 2017); *Schnur v. CTC Commc'ns Corp. Grp. Disability Plan*, 621 F. Supp. 2d 96, 102-03 (S.D.N.Y. 2008). Moreover, although the Court may have discretion to consider evidence submitted for the first time in the movant's reply papers, *see Compania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Rep. of Venezuela*, 341 F. App'x 722, 724 (2d Cir. Aug. 14, 2009), the Court declines to consider the evidence submitted by plaintiff for the first time its reply papers because, *inter alia*, (i) he proffers no explanation for his failure to present such evidence in his opening papers, nor does he claim that the evidence was not available to him at the time he served his initial motion papers; (ii) his belated submission denied defendant an opportunity to respond to such evidence; and, (iii) in any event, the evidence is insufficient to establish as a matter of law that defendant had exclusive use or control of the subject ladder. *See, e.g. Thompson v. Spota*, No. 14-cv-2473, 2019 WL 2602062, at * 3 (E.D.N.Y. June 25, 2019); *Process Am., Inc. v. Cynergy Holdings, LLC*, No. 12-cv-772, 2014 WL 3844626, at * 15 (E.D.N.Y. Apr. 30, 2014), *aff'd*, 839 F.3d 125 (2d Cir. 2016). Indeed, plaintiff was clearly aware of the need to present evidence of defendant's exclusive use or control of the ladder in

*Howard v. Offshore Liftboats, LLC*, No. CV-13-4811, 2016 WL 3536799, at *3 (E.D. La., June 28, 2016) ("[I]f a vessel has a safe, appropriate means of ingress and egress, then ingress and egress is a negligence concept. . . . Only if a vessel fails to provide a safe, appropriate means of ingress and egress is ingress and egress an unseaworthiness concept.")

Similarly, in *Hayes v. County of Nassau*, 557 F. App'x 49 (2d Cir. Feb. 7, 2014) (summary order), the Second Circuit affirmed the district court's conclusion that the plaintiff, who, like Stein, was a County policy officer assigned to the Marine Bureau, could not satisfy the location requirement for federal admiralty jurisdiction over his unseaworthiness claim "because his injury occurred at the base of the gangway leading to the floating dock, which . . . is not on or over navigable waters." *Id.*, 557 F. App'x at 52.

Since, *inter alia*, plaintiff has not established that his injuries were caused by the condition of the vessel, her appurtenances, her cargo or her crew; or that his injury occurred on or over navigable waters, he has not established his entitlement to judgment as a matter law on his unseaworthiness claim against defendant. *See generally Usner*, 400 U.S. at 500, 91 S. Ct. 514; *e.g. Hayes*, 557 F. App'x at 52. Accordingly, the branch of plaintiff's motion seeking summary judgment on his unseaworthiness claim against defendant is denied.

Furthermore, as it appears that federal admiralty jurisdiction does not extend to plaintiff's unseaworthiness claim, plaintiff is hereby,

ORDERED to show cause, by written submission filed **on or before November 4, 2019**, why summary judgment dismissing his unseaworthiness claim in its entirety with prejudice should not be granted in favor of defendant pursuant to Fed. R. Civ. P. 56(f).

---

support of his motion for summary judgment, (*see* Plf. 56.1, ¶¶ 12-15), yet the sole evidence he submitted in his original papers, *i.e.*, a website printout, does not support that claim.

C. Jones Act Claims

"A Jones Act claim is an *in personam* action for a seaman who suffers injury in the course of employment due to negligence of his employer, the vessel owner, or crew members." *Lewis*, 531 U.S. at 441, 121 S. Ct. 993; *see also Matter of Buchanan Marine, L.P.*, 874 F.3d 356, 363 (2d Cir. 2017), *cert. denied sub nom Volk v. Franz*, 138 S. Ct. 1442, 200 L. Ed. 2d 718 (2018) ("The Jones Act confers a cause of action in negligence to any 'seaman injured in the course of employment.'" (quoting 46 U.S.C. § 30104)). "Unlike the law of unseaworthiness, which focuses on the condition of the vessel, . . . the Jones Act places a separate and distinct duty on the owner to provide a reasonably safe workplace[.]" *Oxley*, 923 F.2d at 25.

In cases under the Jones Act, "[a] plaintiff is entitled to go to the jury if 'the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury ... for which damages are sought.'" *Diebold*, 805 F.2d at 57 (emphasis in original) (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506, 77 S. Ct. 443, 1 L. Ed. 2d 493 (1957)[4]; *accord Oxley*, 923 F.2d at 25. Thus, "in Jones Act cases, the right of the jury to pass upon the question of fault and causation must be most liberally viewed." *Oxley*, 923 F.3d at 25 (quotations and citation omitted).

"To prove negligence under the Jones Act, a plaintiff must establish that there was (1) a dangerous condition on the ship [or in the workplace], (2) of which defendant had notice, that (3) proximately caused the plaintiff's injuries." *Martinez*, 684 F. App'x at 92; *see also Diebold*, 805 F.2d at 58 ("Plaintiff was required to prove by a preponderance of the evidence: (1) that a

---

[4] Although *Rogers* involved claims under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, in *Ferguson v. Moore-McCormack Lines, Inc.*, 352 U.S. 521, 77 S. Ct. 457, 1 L. Ed. 2d 511 (1957), the Supreme Court extended its holding to cases under the Jones Act "[s]ince the standard of liability under the Jones Act is that established by Congress under the [FELA]." *Id.* at 523, 77 S. Ct. 457.

dangerous condition actually existed on the ship; (2) that the defendant shipowner had notice of the dangerous condition and should have reasonably anticipated the plaintiff might be injured by it; and (3) that if the shipowner was negligent, such negligence proximately caused the plaintiff's injuries." (quotations and citation omitted)). In addition, "a seaman may recover for injuries caused by his employer's requirement that he do his job in a dangerous manner when other safer methods are readily available, . . . or that he use equipment that is not reasonably fit for the safe performance of the task at hand." *Diebold*, 805 F.2d at 58. Moreover, shipowners have a duty "to provide a reasonably safe means of ingress and egress," and, thus, may be "negligent in failing to provide a safe means of docking and boarding." *Oxley*, 923 F.3d at 25; *see also Hayes*, 557 F. App'x at 52 (agreeing with the plaintiff's contention "that the district court erred in dismissing his Jones Act claim because a seaman's employer has a non-delegable duty to ensure a safe means of ingress/egress to the ship, at least where the seaman acts within the scope of his employment.")

Furthermore, in both FELA and Jones Act cases, "an employer has a 'nondelegable duty to provide its employees with a safe place to work even when they are required to go onto the premises of a third party over which the [employer] has no control[.]'" *Hayes*, 557 F. App'x at 52 (brackets in original) (quoting *Shenker v. Balt. & Ohio R.R. Co.*, 374 U.S. 1, 7, 83 S. Ct. 1667, 10 L. Ed. 2d 709 (1963)). "The employer breaches this duty when it 'knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees.'" *Id.* (quoting *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 84-85 (2d Cir.1989)); *accord Williams v. Long Island R.R. Co.*, 196 F.3d 402, 406 (2d Cir. 1999); *see, e.g. Poignant*, 225 F.2d at 596 (affirming the trial court's finding that the plaintiff's failure to prove

that the defendant had actual or constructive notice of the hazardous condition "was fatal to her cause of action for negligence" under the Jones Act).

There are genuine disputes of material fact as to, *inter alia*, whether the County was negligent in failing to provide plaintiff with a safe place to work, or with a reasonably safe means of ingress and egress to the vessel to which he was assigned on the date of the accident; and, particularly, whether it knew, or should have known, of the defective condition of the ladder and unreasonably failed to protect its employees therefrom. Accordingly, the branch of plaintiff's motion seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on its Jones Act claim against defendant is denied.

1. Res Ipsa Loquitur

The doctrine of res ipsa loquitur, which means, "The thing speaks for itself," "enables a plaintiff to prevail in a certain type of circumstance in proving negligence even though the plaintiff cannot show exactly who or what caused her injury." *Manhattan by Sail, Inc. v. Tagle*, 873 F.3d 177, 180 (2d Cir. 2017). "Under that doctrine, a fact-finder may infer negligence merely from the happening of the event that caused the harm if: (1) the event is of a type that ordinarily would not occur in the absence of negligence; (2) it is caused by an agency or instrumentality under the exclusive control of the party charged with negligence; and (3) it is not due to any voluntary action or contribution on the part of injured party." *Id.*; *see also Potthast v. Metro-North R.R. Co.*, 400 F.3d 143, 149 (2005); *Sojak v. Hudson Waterways Corp.*, 590 F.2d 53, 55 (2d Cir. 1978) (holding that the doctrine of res ipsa loquitur "is applicable only where the instrumentality that causes the harm is under the exclusive control of the defendant and the

accident is of a type that in the ordinary course of events would not occur in the absence of negligence.")

"Res ipsa loquitur is most commonly applied in circumstances where, unlike this case, it is not known exactly who or what caused the accident." *Manhattan by Sail*, 873 F.3d at 183. Moreover, Plaintiff incongruously argues that the accident, *i.e.*, the breaking of the rung of the ladder, is both "extraordinary in nature," such that the doctrine of res ipsa loquitur should apply, (Plf. Mem. at 15; Plf. Reply at 4-5); and that "[i]t is generally accepted that wood will rot when exposed to salt water," and, thus, that the purported rotting of the ladder's rung was not extraordinary, such that defendant should be charged with constructive notice of the defective condition of the ladder. (Plf. Reply at 2).

In any event, plaintiff has not sufficiently established, *inter alia*, that the ladder from which he fell was in the exclusive control of defendant. As set forth above, plaintiff's conclusory assertions that the ladder was under the exclusive control of defendant, without more, are insufficient to satisfy his burden of proof on this issue; and his contention that "[t]here is no evidence otherwise," (Plf. Mem. at 14), impermissibly shifts the burden of proof to defendant. Accordingly, the branches of plaintiff's motion seeking summary judgment on his Jones Act claims pursuant to Rule 56 of the Federal Rules of Civil Procedure are denied in their entirety.

### D. N.Y. Gen. Mun. Law § 205-e Claim

In his reply, plaintiff does not address defendant's contention that his claim under N.Y. Gen. Mun. Law § 205-e, (Compl., ¶¶ 18-19), should be dismissed.

Section 205-e of the New York General Municipal Law provides, in pertinent part:

16

> "In addition to any other right of action or recovery under any other provision of law, in the event any accident, causing injury, . . . occurs directly or indirectly as a result of any neglect, omission, willful or culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments or of any and all their departments, divisions and bureaus, the person or persons guilty of said neglect, omission, willful or culpable negligence at the time of such injury . . . shall be liable to pay any officer, member, agent or employee of any police department injured, . . . while in the discharge or performance at any time or place of any duty imposed by the police commissioner, police chief or other superior officer of the police department, . . . a sum of money, in case of injury to person, not less than one thousand dollars, . . . such liability to be determined and such sums recovered in an action to be instituted by any person injured . . . ."

"In order to assert a claim under General Municipal Law § 205–e, a plaintiff must [1] identify the statute or ordinance with which the defendant failed to comply, [2] describe the manner in which the [police officer] was injured, and [3] set forth those facts from which it may be inferred that the defendant's negligence directly or indirectly caused the harm." *Gammons v City of New York*, 24 N.Y.3d 562, 570, 2 N.Y.S.3d 45, 25 N.E.3d 958 (N.Y. 2014). "[A]s a prerequisite to recovery, a police officer must demonstrate injury resulting from negligent noncompliance with a requirement found in a well-developed body of law and regulation that imposes clear duties." *Williams v City of New York*, 2 N.Y.3d 352, 364, 779 N.Y.S.2d 449, 811 N.E.2d 1103 (N.Y. 2004). Moreover, "[l]iability cannot be imposed under section 205–e unless a plaintiff has established that a statute was, in fact, violated." *Id.*

Since plaintiff has not alleged, much less established, that defendant violated any statute or ordinance, and, indeed, he does not even address so much of defendant's opposition as requests dismissal of his claim under N.Y. Gen. Mun. Law § 205-e, defendant's application to dismiss that claim is granted and plaintiff's N.Y. Gen. Mun. Law § 205-e claim is dismissed in its entirety with prejudice.

17

IV. Conclusion

For the reasons set forth above, plaintiff's motion for summary judgment on the issue of liability on its Jones Act and unseaworthiness claims pursuant to Rule 56 of the Federal Rules of Civil Procedure is denied in its entirety; defendant's application to dismiss plaintiff's claim under N.Y. Gen. Mun. Law § 205-e is granted and that claim is dismissed in its entirety; and plaintiff is hereby,

ORDERED to show cause, by written submission filed **on or before November 4, 2019**, why summary judgment dismissing his unseaworthiness claim in its entirety with prejudice should not be granted for defendant pursuant to Fed. R. Civ. P. 56(f).

The status conference scheduled to be held before the undersigned on January 6, 2020 is **advanced to November 5, 2019 at 11:15 a.m.**

SO ORDERED.

                                                /s/ *Sandra J. Feuerstein*
                                                Sandra J. Feuerstein
                                                United States District Judge

Dated: September 30, 2019
        Central Islip, New York